UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

NICHOLAS HERNANDEZ,

     Plaintiff,

v.                                                                          Case No: 8:21-cv-1488-KKM-TGW

RICK WELLS, in his official capacity,
KEYION LAWS, JOHN GIRGIS,
KRYSTLE MOORE-AGUILERA,
ELIER SANTANA, JOHANNE
BAXTER, JASON RILEY, and
JEFF COWLING, in their
individual capacities,

     Defendants.

_____

## ORDER

Several Manatee County Sheriff's Deputies arrested Nicholas Hernandez eight times over the course of nineteen months. Hernandez sued them, as well as the Manatee County Sheriff Rick Wells, for false arrest under Florida law and for violating his constitutional right to be free from unreasonable seizure. Wells moves to dismiss-in-part the claim against him and the Sheriff's Deputies move to dismiss the constitutional claims against them. The Court grants Wells's motion and grants the Deputies' motions in part, concluding that some of the Deputies are entitled to qualified immunity.

## I.   BACKGROUND[1]

Hernandez works for Manasota Matters, Inc., a charitable organization that houses individuals in several properties and that has sold several other properties to families in need. (Doc. 21 ¶¶ 15–16.) Over nineteen months, Defendants arrested Hernandez eight times, leading to eight prosecutions that the State Attorney's Office later abandoned.

First, on October 7, 2018, Keyion Laws arrested Hernandez for burglary with intent to commit a battery. (*Id.* ¶ 18.) The victim of Hernandez's alleged burglary was Hernandez's tenant, who had stolen funds from Manasota Matters. (*Id.* ¶ 20.) Hernandez told the tenant that he was going to evict him, and the tenant responded by threatening Hernandez. (*Id.*) Later, as the tenant removed fixtures from the residence, Hernandez confronted him. (*Id.*) The tenant responded by threatening to stab Hernandez. (*Id.*) Hernandez called 911, but when officer Keyion Laws arrived, he arrested Hernandez. (*Id.*) He did not interview Hernandez before making the arrest. (*Id.*) The State Attorney's Office charged Hernandez with misdemeanor battery, but then abandoned the charge five months later. (*Id.* ¶¶ 22–23.)

Second, on April 18, 2019, John Girgis signed an affidavit stating that he had probable cause to believe Hernandez committed felony theft, which the State Attorney's Office used to charge Hernandez with theft. (*Id.* ¶¶ 24, 27.) The purported victim of this

---

[1] At this stage, the Court accepts all factual allegations in the complaint as true and construes them in the light most favorable to Hernandez. *See Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008).

theft was another tenant of Hernandez, a tenant whom Hernandez evicted with the assistance of the Manatee Sheriff's Office. (*Id.* ¶ 25.) When the tenant left the property, he "voluntarily abandoned" a number of personal items. (*Id.*) Hernandez retained those items and Girgis based his probable cause of Hernandez's theft on that retention. (*Id.*) Nearly a year later, the State Attorney's Office abandoned the charge. (*Id.* ¶ 29.)

Third, on October 15, 2019, Krystle Moore-Aguilera arrested Hernandez for resisting arrest. (*Id.* ¶ 30.) Hernandez had asked law enforcement to assist in an eviction of a tenant who failed to pay rent. (*Id.* ¶ 31.) Moore-Aguilera claimed that she ordered Hernandez to step outside the building, but he refused. (*Id.*) When she grabbed his arm to arrest him, he pulled away. (*Id.*) According to Hernandez, he "engaged in no such obstructive behavior." (*Id.* ¶ 32.) The State Attorney's Office charged him on November 6, 2019, and nineteen months later, after "review[ing] the security footage," abandoned the charge. (*Id.* ¶ 33–34.)

Fourth, on October 18, 2019, Hernandez was arrested for felony theft based on a probable cause affidavit signed by Moore-Aguilera. (*Id.* ¶¶ 35–36.) The affidavit reported that one of Hernandez's tenants saw him go into another tenant's room and take that tenant's debit card. (*Id.* ¶ 36.) Hernandez denies the theft. (*Id.* ¶ 37.) The State Attorney's Office initially charged him with theft, but one month later abandoned the charge after the purported victim signed an affidavit that the police officers "locked [him] in the back of a

squad car and threatened [him] with arrest if [he] did not file a false burglary report against Hernandez." (*Id.* ¶ 39.)

Fifth, on January 13, 2020, Hernandez was arrested for driving with a suspended license based on an arrest warrant completed by Elier Santana. (*Id.* ¶ 40.) The State Attorney's Office charged Hernandez with misdemeanor driving with a suspended license but then abandoned the charge several months later. (*Id.* ¶¶ 41–42.)

Sixth, Johanne Baxter, a Child Protection Investigator for the Manatee County Sheriff's Office, completed a petition for the removal of Hernandez's children from his custody, which was executed on March 19, 2020. (*Id.* ¶ 43.) On that same day, despite Hernandez presenting his children for a child welfare check, he was arrested for contempt of court for failing to produce them for a child welfare check. (*Id.* ¶ 44.) The contempt arrest was based solely on Baxter's affidavit that asserted that Hernandez failed to produce his children, but Baxter allegedly knew that he did not fail to produce them and knew that he had not even "been served with any [such] order." (*Id.* ¶ 45.) The next day, the contempt of court charge was dismissed. (*Id.* ¶ 46.)

Seventh, on April 22, 2020, Jason Riley arrested Hernandez at his home for driving with a suspended license and for misdemeanor obstruction of his arrest. (*Id.* ¶¶ 47, 53.) The driving charge was based on the same affidavit from Santana that was used to make the fifth arrest. (*Id.* ¶ 51.) Hernandez told Riley when Riley arrested him that the charge

4

had been abandoned. (*Id.*) Riley claimed that Hernandez was refusing commands. (*Id.* ¶ 53.) Ostensibly because of his refusal, Riley grabbed Hernandez's arm and another deputy then grabbed Hernandez at the neck. (*Id.*) Riley claimed that Hernandez "tensed up" when Riley ordered him to put his arms behind his back, and Riley arrested him for obstruction. (*Id.*) The State Attorney's Office initially charged Hernandez but, just like the charge produced by the fifth arrest, the State Attorney's Office abandoned the charge. (*Id.* ¶ 54.)

Finally, on May 13, 2020, Jeff Cowling arrested Hernandez for two counts of burglary with intent to commit a battery. (*Id.* ¶¶ 55–56.) The grandparents of Hernandez's children had claimed that he entered their home and "struck them." (*Id.* ¶ 56.) Hernandez alleges that this is not true and that Cowling did not attempt to interview Hernandez to confirm. (*Id.*) Instead, Hernandez alleges that he was struck by the grandparents while he was holding his son. (*Id.*) Based on Cowling's statement of probable cause, the State Attorney's Office filed a charge against him for battery. (*Id.* ¶ 58.) The State Attorney's Office then abandoned the charge after it reviewed transcripts where the grandfather stated that he "followed Hernandez into a bedroom and grabbed him by the neck and shoulder while Mr. Hernandez was holding his own seven-year old son in his arms." (*Id.* ¶ 59.)

Hernandez filed his initial complaint on June 20, 2021, bringing one Florida law claim of false arrest against Sheriff Wells in his official capacity, and seven 42 U.S.C.

§ 1983 claims against the remaining defendants for unreasonably seizing him without probable cause. Defendants moved to dismiss and Hernandez filed an Amended Complaint, mooting their motion. (Doc. 16; Doc. 21; Doc. 24.) Defendants all moved to dismiss the Amended Complaint, (Doc. 25; Doc. 45), and Hernandez responded, (Doc. 28; Doc. 46).

## II.   LEGAL STANDARD

To survive a motion to dismiss for failure to state a claim, a plaintiff must plead sufficient facts to state a claim that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation omitted). A claim is plausible on its face when a plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* A claim is not plausible if it is merely possible, and in deciding whether the complaint "crosses 'the line between possibility and plausibility of entitlement to relief,' 'courts may infer from the factual allegations in the complaint obvious alternative explanations, which suggest lawful conduct rather than the unlawful conduct the plaintiff would ask the court to infer.'" *Doe v. Samford Univ.*, 29 F.4th 675, 686 (11th Cir. 2022) (quotations omitted).

When considering the motion, the court accepts all factual allegations of the complaint as true and construes them in the light most favorable to the plaintiff. *See Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008). This tenet, of course, is "inapplicable

to legal conclusions." *Iqbal*, 556 U.S. at 678. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* at 679. When reviewing a motion to dismiss, courts should limit their "consideration to the well-pleaded factual allegations, documents central to or referenced in the complaint, and matters judicially noticed." *La Grasta v. First Union Sec., Inc.*, 358 F.3d 840, 845 (11th Cir. 2004).

## III.   ANALYSIS

Hernandez brings eight counts, consisting of two kinds of claims. The first, alleged in Count I, is a claim for false arrest under Florida law. Defendant Wells moves to dismiss this claim in part. Because dismissal is warranted and because Hernandez agrees, the Court grants that partial dismissal. The second, alleged in Counts II through VIII, are § 1983 claims for unreasonably seizing him without probable cause. Defendants move to dismiss all these claims. Hernandez opposes these motions. Concluding that Counts III, V, VII, and VIII of Hernandez's Amended Complaint fail to plausibly allege a lack of arguable probable cause, the Court dismisses them. But the remaining Counts survive.

### A. Florida False Arrest Claim

In Count One, Hernandez sues Sheriff Rick Wells in his official capacity for false arrest premised on the eight alleged false arrests suffered by Hernandez from his deputies. False arrest under Florida law requires four elements: "(1) unlawful detention and deprivation of liberty of a person (2) against that person's will (3) without legal authority

or 'color of authority' and (4) which is unreasonable and unwarranted under the circumstances." *Florez v. Broward Sheriff's Off.*, 270 So. 3d 417, 421 (Fla. 4th DCA 2019) (quotation omitted) (opening parenthesis added to each numeral). When a plaintiff is arrested "based on a facially sufficient and validly issued arrest warrant, that person cannot satisfy the elements of a false arrest claim because the warrant confers 'legal authority' on the arresting agency." *Id.* (quotation omitted).

Wells contends that he cannot be liable for any of the alleged arrests that were based on a warrant. (Doc. 25 at 16.) Wells is correct. *See Florez*, 270 So. 3d at 421. Hernandez agrees and consents to the dismissal of those parts of Count I premised on the arrests based on a warrant. (Doc. 28 at 12.) The parties identify that arrests two, four, five, and six were on the basis of a warrant. (Doc. 25 at 16; Doc. 28 at 12.) The Court thus dismisses Count I to the extent that it is premised on those arrests.

### B. § 1983 Claims for Unreasonable Seizure

Defendants contend that Hernandez either fails to state a claim for relief or that they are at least entitled to qualified immunity. The Court agrees with Defendants on Counts III, V, VII, and VIII, but concludes that the remaining Counts state a claim for relief and that Defendants are not entitled to qualified immunity on those Counts.

A plaintiff who suffered "the deprivation of any rights, privileges, or immunities secured by the Constitution" from someone acting under color of state law may bring an

action for redress under 42 U.S.C. § 1983. "Law enforcement violates a person's Fourth Amendment rights when it arrests him or her without probable cause, and a claim arises under § 1983." *Rushing v. Parker*, 599 F.3d 1263, 1265 (11th Cir. 2010). A claim for unreasonable seizure in violation of the Fourth Amendment is a claim for malicious prosecution if the arrest followed legal process, such as a warrant, and is a claim for false arrest or imprisonment if the arrest was made without a warrant. *See Heck v. Humphrey*, 512 U.S. 477, 484 (1994); *Carter v. Gore*, 557 F. App'x 904, 906 (11th Cir. 2014) (per curiam). Both claims require the plaintiff to prove a lack of probable cause. *See Nieves v. Bartlett*, 139 S. Ct. 1715, 1726 (2019).

An officer has probable cause when a "reasonable officer could conclude . . . that there was a substantial chance of criminal activity." *Washington v. Howard*, 25 F.4th 891, 902 (11th Cir. 2022) (quoting *District of Columbia v. Wesby*, 138 S. Ct. 577, 588 (2018)). When deciding whether he has probable cause, "an officer may not 'unreasonably disregard certain pieces of evidence' by 'choosing to ignore information that has been offered to him or her' or 'electing' not to obtain easily discoverable facts" that would "tend to exculpate a suspect." *Cozzi v. City of Birmingham*, 892 F.3d 1288, 1294 (11th Cir. 2018) (alterations adopted) (quotation omitted). "Nor may [an] officer conduct an investigation in a biased fashion." *Kingsland v. City of Miami*, 382 F.3d 1220, 1229 (11th Cir. 2004), *abrogated on other grounds by Williams v. Aguirre*, 965 F.3d 1147 (11th Cir. 2020). And finally, when

analyzing probable cause, courts must compare the facts available to the officer at the time of arrest with the "elements of the alleged crime for which the plaintiff was arrested." *Carter v. Butts Cnty.*, 821 F.3d 1310, 1320 (11th Cir. 2016); *Bailey v. City of Miami Beach*, 476 F. App'x 193, 197 (11th Cir. 2012) (per curiam) ("When performing our arguable probable cause analysis, we look at the information known to the officer at the time of the arrest.").

Of course, a state official exercising discretionary authority may defeat a § 1983 claim if he is entitled to qualified immunity. *See Harlow v. Fitzgerald*, 457 U.S. 800, 813–15, 818 (1982). As a defense, the official carries the initial burden to show that he was exercising his discretionary authority. *See Helm v. Rainbow City*, 989 F.3d 1265, 1272 (11th Cir. 2021). If he carries that burden, the plaintiff must then show that the official violated a constitutional right and that the constitutional right "was clearly established at the time of the wrongdoing." *Id.*

As a rule, an individual's constitutional right to be free from arrest is not "clearly established" so long as the arresting officer "had *arguable* probable cause." *Post v. City of Fort Lauderdale*, 7 F.3d 1552, 1559 (11th Cir. 1993) (emphasis added), *modified*, 14 F.3d 583 (11th Cir. 1994); *see also Carter*, 821 F.3d at 1320 ("Where an officer arrests without even arguable probable cause, he violates the arrestee's clearly established Fourth Amendment right to be free from unreasonable seizures."). An officer has arguable probable cause when "a reasonable officer in the same circumstances and possessing the

same knowledge as the officer in question *could* have reasonably believed that probable cause existed in the light of well-established law." *Gold v. City of Miami*, 121 F.3d 1442, 1445 (11th Cir. 1997); *accord Helm*, 989 F.3d at 1279. At the pleading stage, a plaintiff must allege "non-conclusory allegations allowing the [c]ourt to infer the absence of probable cause." *Hesed-El v. McCord*, 829 F. App'x 469, 472 (11th Cir. 2020) (per curiam).

Hernandez brings seven Counts for unreasonable seizure in violation of his Fourth Amendment rights. Hernandez does not identify whether these Counts are for malicious prosecution or false arrest, which are distinct claims and require different proof. *See Nieves*, 139 S. Ct. at 1726; *Thompson v. Clark*, 142 S. Ct. 1332, 1335 (2022). Nonetheless, the distinctions are immaterial here, where the only argument Defendants raise is that Hernandez failed to allege a lack of probable cause or arguable probable cause, required to state a claim or defeat qualified immunity for either claim. (Doc. 25 at 14; Doc. 45 at 12.) Hernandez alleges that the officers were acting within the scope of their discretionary authority. (Doc. 21 ¶ 2 (alleging that Defendants were "acting within the course and scope of their employment" when they "violated Hernandez's Fourth Amendment right to be free from an unreasonable arrest").) Thus, if Hernandez fails to allege that Defendants lacked arguable probable cause to arrest Hernandez when they did, Defendants are entitled to qualified immunity against Hernandez's claims. But if he plausibly alleges that

11

Defendants lacked arguable probable cause, then he both states a claim for relief under § 1983 for a Fourth Amendment violation and, at least at this stage, Defendants are not entitled to qualified immunity.

### i.   Counts Requiring Dismissal

Defendants argue that Hernandez failed to allege that they lacked probable cause, or at least arguable probable cause, for each of their arrests. Four of them—Girgis, Santana, Riley, and Cowling—are correct. In each of these claims, Hernandez alleges that the State Attorney's Office decided to abandon the charge on which Hernandez was arrested. But those decisions are immaterial for determining whether the officer had probable cause, and the Court will not analyze the point under each separate count. *See L.S.T., Inc. v. Crow*, 49 F.3d 679, 685 (11th Cir. 1995) ("The fact that all charges against the plaintiffs were eventually dismissed for one reason or another is 'of no consequence' to [the officer's probable cause at the time of arrest].").

First, in Count III, Hernandez alleges that Girgis unreasonably seized him by signing an affidavit stating that he had probable cause to believe that Hernandez committed felony theft. (Doc. 21 ¶¶ 24, 68.) Hernandez had enlisted the assistance of the Sheriff's Office in evicting a tenant and that tenant left some items at the residence. (*Id.* ¶ 25.) Girgis purportedly claimed that Hernandez stole these items, committing felony theft (*id.*), which occurs under Florida law when a person "knowingly obtains or uses, or

12

endeavors to obtain or to use, the property of another with intent to, either temporarily or permanently . . . [d]eprive the other person of a right to the property or a benefit from the property." § 812.014, Fla. Stat. Hernandez contends that Girgis lacked arguable probable cause for his belief because the tenant "voluntarily abandoned" the items at the residence and because Girgis performed no investigation into the facts. (Doc. 21 ¶ 25.)

But Hernandez fails to show that Girgis lacked arguable probable cause. He appears to argue in his response to Defendants' Motions to Dismiss (which simply recounts his allegations) that the lack of an investigation and the fact that the Sheriff's Office assisted Hernandez in the eviction means that "no reasonable officer, faced with the situation before [Girgis], could have believed that probable cause to arrest existed." *Post*, 7 F.3d at 1559. Both arguments fail.

To start, Hernandez's investigation argument has no force because he fails to allege any investigative deficiencies that would prevent "reasonable officers in the same circumstances and possessing the same knowledge as [Girgis]" from "believ[ing] that probable cause existed to arrest [him]." *Kingsland*, 382 F.3d at 1233. Although an officer must conduct a "reasonable investigation" to establish probable cause, *Rankin v. Evans*, 133 F.3d 1425, 1435 (11th Cir. 1998), the burden is still on the plaintiff to show that the investigation was unreasonable, *see Washington v. Rivera*, 939 F.3d 1239, 1245 (11th Cir. 2019) (noting that the plaintiff bears the burden of showing both that a constitutional right

13

was violated and that the right was clearly established). A mere failure "to discover 'easily discoverable facts'" does not prevent an officer from having arguable probable cause. *Id.* at 1248 (quotation omitted). Instead, the officer must actively avoid the evidence in some way—such as through a biased investigation or refusing to attend to evidence offered to him. *See Cozzi*, 892 F.3d at 1294; *Kingsland*, 382 F.3d at 1229. Hernandez alleges no such active avoidance on Girgis's part. *See id.* ("[A] police officer 'is not required to explore and eliminate every theoretically plausible claim of innocence before making an arrest.'" (quotation omitted)).

Further, the Court cannot reasonably infer from the fact that the Sheriff's Office assisted in the eviction of Hernandez's tenant that a reasonable officer could not have believed there was a "substantial chance" that Hernandez committed theft. *Washington*, 25 F.4th at 901. Assuming—as Hernandez's Amended Complaint seems to—that Girgis knew of the eviction, he knew that the items did not leave with the tenant, their original owner. An officer in Girgis's circumstances might reasonably view this as indicating that Hernandez intended to retain the tenant's property. And if a reasonable officer could believe that Hernandez was keeping the tenant's property, then that officer could conclude "that there was a substantial chance" that Hernandez was "knowingly obtain[ing] . . . the property of [the tenant] with intent to . . . permanently . . . [d]eprive" the tenant of his property. *Washington*, 25 F.4th at 902; § 812.014, Fla. Stat. Even if Hernandez intended

14

to return the property to the tenant, the Amended Complaint fails to allege such an intent—and certainly fails to allege that Hernandez communicated that intent to Girgis or the other officers. Although Hernandez alleges that the tenant "voluntarily abandoned" the property, he fails to allege that Girgis knew that the property was voluntarily abandoned. And Girgis need not make an investigation into whether the tenant "voluntarily abandoned" the property. Girgis was under no obligation to "rule out a suspect's innocent explanation for suspicious facts" or to "resolve conflicting evidence in a manner favorable to the suspect." *Washington*, 25 F.4th at 902 (quoting *Wesby*, 138 S. Ct. at 588).

And if the Court does not assume that Girgis knew of the eviction, then Hernandez fails to provide any factual support to indicate that Girgis lacked arguable probable cause at the time of arrest. Merely alleging the existence of the arrest and the lack of arguable probable cause is insufficient. *See Hesed-El*, 829 F. App'x at 472–73 (affirming the district court's conclusion that the plaintiff failed to state a claim "because he did not allege sufficient facts to show the absence of probable cause for his arrest"). Hernandez "had to raise 'non-conclusory allegations allowing the [c]ourt to infer the absence of probable cause.'" *Id.* at 472. The Court dismisses Count III.

Second, in Count V, Hernandez alleges that Elier Santana unreasonably seized Hernandez by completing an arrest warrant that claimed he committed felony driving with a suspended license. (Doc. 21 ¶¶ 40, 74.) This Count is entirely conclusory. Hernandez

alleges with some specificity where and when he was arrested—in his living room on January 13, 2020—but offers no reason to doubt that Santana had arguable probable cause. The entirety of Hernandez's allegations regarding Santana's probable cause is contained in two sentences: "Santana had no arguable probable cause to believe Hernandez committed this or any other criminal offense. Santana did not have arguable probable cause to believe that Hernandez operated a motor vehicle while his driver license was in a state of suspension." (Doc. 21 ¶ 40.) The Court cannot assume his contrary statements, which are wholly conclusory, are true. *See Iqbal*, 556 U.S. at 681; *Gill v. Judd*, 941 F.3d 504, 515 (11th Cir. 2019) (holding that nearly identical allegations were conclusory). The Court dismisses Count V.

Third, in Count VII, Hernandez alleged that Riley "effected an unreasonable seizure of Hernandez" for driving on a suspended license and for misdemeanor obstruction. (Doc. 21 ¶¶ 51, 53, 80.) Because this arrest was based on two offenses, arguable probable cause for either offense would entitle Riley to qualified immunity. *See Grider v. City of Auburn*, 618 F.3d 1240, 1257 (11th Cir. 2010).

Hernandez fails to allege that Riley lacked arguable probable cause to believe that Hernandez was driving with a suspended license, entitling Riley to qualified immunity. *See id.* Riley arrested Hernandez for driving with a suspended license based on an affidavit filed by Santana. (Doc. 21 ¶ 47.) When Riley arrived to arrest him, Hernandez told Riley that

"the charge had been *nolle prossed* seven days earlier." (*Id.* ¶ 51.) That earlier charge was also for driving with a suspended license and was based on the same affidavit from Santana that Riley used as the basis to arrest Hernandez. (*Id.* ¶¶ 47, 51.) Hernandez alleges that Riley "took no reasonable steps to confirm" whether the charge had been abandoned. (*Id.* ¶ 52.)

Although an officer must ordinarily "look at or inquire about" "easily verifiable exculpatory information," this rule does not apply here because Hernandez did not provide Riley any "verifiable exculpatory information." *Cozzi*, 892 F.3d at 1294. After all, even if Riley had confirmed that the earlier charge had been abandoned, that information would not be "exculpatory" because a prosecutor might abandon a charge for a variety of reasons, only one of which would be that the evidentiary basis was so low that there was not even probable cause for an arrest. *See Migut v. Flynn*, 131 F. App'x 262, 263 (11th Cir. 2005) (per curiam) (describing a nolle prosse decision that stated the charge was dismissed even though "there was probable cause for arrest and charge of the [d]efendant"). The Court cannot reasonably infer from Hernandez's allegations that the charge had been abandoned due to the lack of probable cause or that Riley lacked even arguable probable cause simply because an earlier identical charge had been abandoned. Nor can the Court reasonably infer from Hernandez's allegations that the status of the charge or the reason for abandoning it was information that Riley could "easily verif[y]." *Cozzi*, 892 F.3d at 1294. Hernandez

17

alleges no other investigative failures or biases that required Riley to perform a more thorough investigation. *See Rivera*, 939 F.3d at 1249.

The Court is thus left with the mere allegation that Riley relied on a probable cause affidavit from another officer to conclude that Hernandez committed the offense of driving with a suspended license. Ordinarily, "[w]here there is at least minimal communication between different officers, the collective knowledge of the officers determines probable cause." *United States v. Allison*, 953 F.2d 1346, 1350 (11th Cir. 1992). As such, the issue turns on whether Riley had arguable probable cause based on Santana's affidavit, together with any information Riley independently possessed. Stated otherwise, would "a reasonable officer in the same circumstances and possessing the same knowledge as the officer in question" "reasonably believe[] that probable cause existed in the light of well-established law." *Gold*, 121 F.3d at 1445 (quotation omitted). Hernandez fails to allege the contents of the probable cause affidavit or any other facts from which the Court can conclude that Riley lacked arguable probable cause. *Cf. Craft v. Olszewski*, 428 F. App'x 919, 921 & n.2 (11th Cir. 2011) (per curiam) (concluding that an officer lacked arguable probable cause because the plaintiff alleged the facts within the collective knowledge of the officers and those facts were insufficient for probable cause). Because Hernandez fails to plausibly allege that Riley lacked arguable probable cause to arrest him for driving with a suspended license, Riley is entitled to qualified immunity for his arrest of Hernandez and it is irrelevant

whether he had arguable probable cause to arrest Hernandez for misdemeanor obstruction. *See Grider*, 618 F.3d at 1257 ("If the arresting officer had arguable probable cause to arrest for any offense, qualified immunity will apply."). The Court dismisses Count VII.

Fourth, Hernandez alleges in Count VIII that Cowling unreasonably seized Hernandez by arresting him for "two counts of burglary with intent to commit a battery." (Doc. 21 ¶¶ 56, 83.) Hernandez contends that Cowling lacked arguable probable cause because he failed to interview Hernandez and because the purported victim—at some unalleged time—stated that it was he who attacked Hernandez. (*Id.* ¶¶ 56, 59.) But the mere failure to interview the plaintiff does not deprive an arresting officer of probable cause and certainly does not deprive an officer of arguable probable cause. *See Huebner v. Bradshaw*, 935 F.3d 1183, 1190 (11th Cir. 2019). Hernandez also notes that, at the time of arrest, he was "subject to false claims by his children's grandparents that he entered their home and struck them." (*Id.* ¶ 56.) But he does not allege that Cowling knew these claims were false or how he would have known they were false. Instead, the false claims give a "reasonable officer in the same circumstances and possessing the same knowledge" as Cowling more cause to believe that Hernandez committed the batteries. *Gold*, 121 F.3d at 1445.

Hernandez also notes—though it is unclear whether he thinks that this indicates a lack of arguable probable cause—that his charge was abandoned after the State Attorney's

19

Office reviewed transcripts of a hearing where the purported victim of Hernandez's burglary stated that he battered Hernandez. (Doc. 21 ¶ 59.) Interpreting this as one of Hernandez's arguments, it brings him no closer to alleging that Cowling lacked arguable probable cause at the time of arrest.

Even construing in favor of Hernandez, the Court can only infer a "possibility" that Cowling knew of this transcript when he arrested Hernandez. *Iqbal*, 556 U.S. at 678 (holding that the plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully"). For Cowling to have known of the victim's statement when he arrested Cowling, the hearing must have occurred before the arrest—a fact Hernandez does not allege. Assuming that the hearing did occur prior to arrest, the Amended Complaint still lacks any indication that Cowling knew of the statement, leaving the Court with nothing more than the possibility that Cowling was aware of the hearing transcript and the victim's statement. *See id.* at 679 (requiring "more than the mere possibility of misconduct"). Because Hernandez's allegations regarding Cowling's need to investigate and the transcript hearing do not indicate that Cowling lacked arguable probable cause, the Court is left with Hernandez's mere conclusory allegation that Cowling lacked arguable probable cause. The Court cannot assume that conclusory allegations are true, and so Hernandez fails to show that Cowling lacked arguable probable cause. *See Iqbal*, 556 U.S. at 681. The Court dismisses Count VIII.

### ii. Counts that Survive

Nonetheless, the officers lacked arguable probable cause for most of the arrests, at least as alleged by Hernandez. Specifically, Counts II, IV, and VI survive Defendants' Motions to Dismiss.

First, Count II alleges that Laws unreasonably seized Hernandez without arguable probable cause when he arrested Hernandez for burglary with intent to commit a battery. (Doc. 21 ¶ 18, 65.) According to the Amended Complaint, Hernandez had confronted his tenant at the leased residence after he told the tenant he was going to evict him and the tenant had begun removing fixtures from the property. (*Id.* ¶ 20.) That tenant then threatened to stab Hernandez, threats which "could be heard in the background of a 911 call Hernandez made during the confrontation." (*Id.*) Apparently in response to this 911 call—the Amended Complaint is unclear on this point—Laws arrived on the scene and arrested Hernandez for burglary with intent to commit a battery. (*Id.*)

Based on Hernandez's allegations, Laws lacked arguable probable cause to believe that Hernandez committed burglary with intent to commit a battery. A person is guilty of burglary with intent to commit a battery when he "enter[s] a dwelling . . . with the intent to" "[a]ctually and intentionally touch[] or strike[] another person against the will of the other[] or . . . [i]intentionally cause[] bodily harm to another person." § 810.02, Fla. Stat. (defining burglary); § 784.03, Fla. Stat. (defining battery).

The only basis for Laws to arrest Hernandez that the Court can infer from the Amended Complaint is the fact that Hernandez was present at the scene of the confrontation when Laws arrived. Of course, "[m]ere presence at the scene of a crime, without more, does not support a finding of probable cause to arrest." *Holmes v. Kucynda*, 321 F.3d 1069, 1081 (11th Cir. 2003) (quotation omitted) (noting that this rule is "clearly established" in the Eleventh Circuit). Thus, no reasonable officer, knowing only that Hernandez was present at the leased residence during the confrontation, could think that he was at the scene with the intent to "cause[] bodily harm to [the tenant]." § 784.03, Fla. Stat. "Accepting [Hernandez's] allegations as true, [the Court is] effectively left only with [Hernandez's] presence" at the scene of the confrontation, insufficient for an officer to have arguable probable cause. *Giles v. Manser*, 757 F. App'x 891, 896 (11th Cir. 2018) (per curiam).

Second, in Count IV, Hernandez alleges that Moore-Aguilera "effected two unreasonable seizures" on him and she had "no arguable probable cause" for either seizure. (Doc. 21 ¶ 71.) The first of these unreasonable seizures was Moore-Aguilera's October 15, 2019 arrest of Hernandez for "resisting arrest without violence." (*Id.* ¶ 31.)

The arrest was based on Moore-Aguilera's claim that when she asked Hernandez to step outside of one of his buildings, he refused and when she "placed her hand on his arm to arrest him," he pulled away from her. (*Id.*) But, according to Hernandez, he

22

"engaged in no such obstructive behavior." (*Id.* ¶ 32.) If he actually engaged in "no such obstructive behavior," then Moore-Aguilera would have no reason to think that he was "resisting arrest without violence." And lacking any such reason, "a reasonable officer in the same circumstances and possessing the same knowledge as the officer in question could [not] have reasonably believed that probable cause existed in the light of well-established law." *Gold*, 121 F.3d at 1445 (emphasis omitted) (quotation omitted); *see Gray v. City of Roswell*, 564 F. App'x 1001, 1001 (11th Cir. 2014) (per curiam) (concluding that there was no probable cause where there was "no basis for believing that [the plaintiff] committed a crime"). After all, there is nothing else in the Amended Complaint to indicate that Hernandez resisted arrest on October 15. *See Watkins v. Bigwood*, 797 F. App'x 438, 442 (11th Cir. 2019) (per curiam) (concluding that plaintiff sufficiently alleged a lack of arguable probable cause when he "flatly" denied the conduct that the officers claimed gave them probable cause); *Helm*, 989 F.3d at 1279 (concluding that an officer was not entitled to qualified immunity on summary judgment because his qualified immunity turned on a dispute of fact).

The other "unreasonable seizure" that Moore-Aguilera allegedly effected on Hernandez was when she signed a probable cause affidavit claiming that he committed felony theft. (Doc. 21 ¶ 35.) As the basis for her belief, Moore-Aguilera asserted in her

affidavit that one of Hernandez's tenants saw him go into another tenant's room and take that tenant's debit card. (*Id.* ¶ 36.)

But according to Hernandez, the tenant who reported this to Moore-Aguilera was "locked . . . in the back of a squad car and threatened . . . with arrest if [he] did not file a false theft report against Hernandez." (*Id.* ¶ 39.) Although Hernandez does not allege that Moore-Aguilera knew that the report was the result of police manipulation, he alleges that she knew the burglary did not take place. (*Id.* ¶ 37.) The Court can reasonably infer that the reason Moore-Aguilera knew that he did not commit theft is because she was among the officers who threatened the reporting tenant or that she learned it from them. *See Iqbal*, 556 U.S. at 678 (noting that a claim is plausible when the court can draw the reasonable inference that the defendant is liable). "Falsifying facts to establish probable cause is clearly unconstitutional and has been 'clearly established' long before [Hernandez's] arrest." *Mead v. McKeithen*, 571 F. App'x 788, 792 (11th Cir. 2014) (per curiam). A reasonable officer "in the same circumstances and possessing the same knowledge as [Moore-Aguilera] could not have believed that probable cause existed to arrest [Hernandez]" based on fabricated evidence. *Kingsland*, 382 F.3d at 1233.

In Count VI, Hernandez alleges that Baxter "effected an unreasonable seizure of Hernandez" because there was no arguable probable cause for his arrest. (Doc. 21 ¶ 77.) Baxter signed an affidavit claiming that Hernandez "failed to produce his children" for a

welfare check, resulting in his arrest for contempt of court. (*Id.* ¶ 44–45.) A person can be in contempt of court when he "refus[es] to obey any legal order, mandate or decree, made or given by any judge relative to any of the business of the court, after due notice thereof." § 38.23, Fla Stat. According to Hernandez, Baxter knew "that Hernandez did not fail to produce his children for a welfare check" and knew that he had not even "been served with any order to produce his children." (*Id.* ¶ 45.) A reasonable officer who knew both of these facts could not think that there was arguable probable cause to believe Hernandez "refus[ed] to obey" a legal order. § 38.23, Fla. Stat.; *see Watkins*, 797 F. App'x at 442 (concluding that plaintiff sufficiently alleged a lack of arguable probable cause when he "flatly" denied the conduct that the officers claimed gave them probable cause). Baxter, based on the allegations in the Amended Complaint, had no "trustworthy information[ that] would cause a prudent person to believe, under the circumstances," that Hernandez failed to produce his children for the welfare check. *Hardigree v. Lofton*, 992 F.3d 1216, 1230 (11th Cir. 2021).

## IV. CONCLUSION

Defendants move to dismiss the constitutional claims against them and to dismiss-in-part the Florida law claim against Wells. The Court grants the motion to dismiss-in-part the Florida law claim against Wells and grants the other motions in part. Specifically,

the Court dismisses Counts III, V, VII, and VIII. The remaining Counts survive. Accordingly, the following is **ORDERED**:

1.    The Court **GRANTS-IN-PART** Defendants Johanne Baxter, Jeff Cowling, Keyion Laws, Jason Riley, Elier Santana, and Rick Wells' Motion to Dismiss. (Doc. 25.) The Court dismisses-in-part Count I insofar as it bases its claim of false arrest on Hernandez's second, fourth, fifth, and sixth arrests. The Court dismisses Count V, brought against Santana, Count VII, brought against Riley, and Count VIII, brought against Cowling from this action. Because Hernandez sued Santana, Riley, and Cowling only in Counts V, VII, and VIII, the Court dismisses them as defendants from this action. The Clerk is directed to terminate Santana, Riley, and Cowling from this action.

2.    The Court **GRANTS-IN-PART** Defendants John Girgis and Krystle Moore-Aguilera's Motion to Dismiss. (Doc. 45.) The Court dismisses Count III, brought against Girgis. Because Hernandez sued Girgis only in Count III, the Court dismisses Girgis from this action. The Clerk is directed to terminate Girgis from this action.

3.    The parties must file an amended case management report within seven days of this order.

26

**ORDERED** in Tampa, Florida, on May 20, 2022.

Kathryn Kimball Mizelle
United States District Judge